UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James E. Hicks, Jr.,

    Petitioner,

v.                                                Civil Action No. 5:12-cv-188

State of Vermont,

    Respondent.

## REPORT AND RECOMMENDATION
(Docs. 1, 8, 14.)

James E. Hicks, Jr., a Vermont inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Hicks is currently serving a state sentence of 24 to 41 years after having been convicted of two counts of sexual assault against a minor and one count for lewd and lascivious behavior with a minor, all involving two different girls under age 16 (his "step-daughters"). His petition raises a number of claims, certain of which have already been raised in state court, either on direct appeal or in one of his two state proceedings for post-conviction relief.

Respondent has opposed the petition (Doc. 8; Doc. 11), arguing that Hicks has failed to exhaust his state remedies for claims that have never been raised in state court, and received relief as to other claims. In opposing the petition, Respondent also filed what it characterizes as a "motion for summary dismissal." (Doc. 8.) In response, Hicks

filed a motion to appoint counsel because he has "limited access to the courts and law library." (Doc. 14 at 3.)

For the reasons set forth below, I recommend that the State's motion for summary dismissal be GRANTED and Hicks's petition be DISMISSED without prejudice. Given these recommendations, Hicks's motion for the appointment of counsel should be DENIED.

## **Facts and Procedural Background**

Hicks was charged with sexually assaulting his two minor step-daughters in 1995, a jury trial followed in 1996, and the Vermont Supreme Court affirmed the conviction in 1998. Soon thereafter, Hicks filed his first petition for state post-conviction relief. The petition remained pending for more than seven years, at which time a two-day post-conviction relief trial was held in May 2005. The Vermont Superior Court denied relief in a twenty-five page written order, which the Vermont Supreme Court affirmed on appeal. Hicks then filed a second petition for post-conviction relief in August 2006, which was ultimately dismissed by agreement of the parties in May 2012 in exchange for a reduction of Hicks's maximum sentence from 41 to 35 years.[1] Hicks filed the instant petition on August 20, 2012. This procedural history will be discussed in considerable detail below, derived largely from the Vermont Superior Court's order on the first petition for post-conviction relief. (Doc. 11-5.)

---

[1] Hicks denies his agreement to this dismissal. (Doc. 14 at 1.)

**I.    The Trial**

The case against Hicks commenced by the filing of an information on November 8, 1995, after more than a year of police investigation into allegations of sexual abuse from Hicks's eleven and twelve year old step-daughters.  The police officer's affidavit in support of the information stated that the three offenses—the two sexual assaults and lewd and lascivious behavior—occurred on the same day, sometime between April 3 and June 1, 1994.  The information as originally filed contained the same dates.  At some point prior to trial, however, after Hicks gave notice that he would be asserting an alibi defense, the State amended the information and expanded the date range, alleging that the abuse occurred between January and August 1994, the entire period of time that the step-daughters lived at the house where the alleged abuse occurred (the "Coventry Street house").  The case went to trial with the expanded date range rather than the narrower period that was initially alleged.

From the outset, and through the end of trial, Hicks was represented by privately-retained counsel, Attorney Robert Fairbanks.  The case was tried to a jury from July 15 to 17, 1996 before then-Judge Brian Burgess.  After only one hour of deliberations, the jury returned a guilty verdict on all three counts charged.

On the morning that trial was scheduled to begin, both Hicks and Attorney Fairbanks requested that Fairbanks be allowed to withdraw.  The reasons expressed mainly involved the failure of the two to be able to communicate adequately (and thus prepare for trial).  Although the State offered to continue the case for two months to allow a new attorney to enter the case, the trial judge denied the continuance, and gave

Hicks the "choice" to either defend himself *pro se* (beginning that very day) or allow Fairbanks to continue representing him. Hicks opted for the latter, and the case proceeded to trial as scheduled.

The State presented the testimony of the two step-daughters and an expert witness. The State's Attorney began the evidence by examining each girl about the events giving rise to the criminal case, to which both responded that they had been sexually abused by Hicks. The step-daughters' testimony included a graphic description of the incident in question (Doc. 11-5 at 5 n.9), but neither of them could definitely testify to the date on which this event had transpired. While the younger girl principally testified about a single incident of abuse, the older girl elaborated that such abuse occurred "a lot" and that Hicks had threatened to kill her if she told anyone.

The issue of delayed disclosure permeated the trial. According to their testimony, the step-daughters did not disclose the abuse to anyone until after they moved out of the Coventry Street house and into foster care, sometime around September 1994. To explain this delay, the State proffered the expert testimony of Janet Porter, a licensed psychologist who had been counseling and working with child abuse victims for 7 years. Porter explained that delayed reporting was "quite common" in cases of children who suffer sexual abuse because they fear losing their family and support systems. Indeed, Porter testified that such delayed reporting occurred in "over 90 percent" of cases, and stated that when children do lie about abuse it is much more likely that they will falsely deny that any abuse occurred. Attorney Fairbanks never objected to Porter's testimony, moved to have it stricken, or requested any sort of curative instruction (such as to avoid

4

the appearance that Porter had commented on the girls' credibility). After cross-examination, however, it was made clear that Porter had never interviewed or treated the step-daughters, did not review any documents or reports about this particular case, and had "very little knowledge" about the facts at issue. So, speaking only in generalities, Porter explained that three factors tend to influence delayed reporting: whether the abuser is a parent or parent figure, whether the abuse was aggressive and accompanied by threats or force, and whether there was actual penetration, or attempted penetration, rather than fondling. As the State's Attorney argued in summation, all three factors were present in this case.

Hicks presented a two-pronged theory in his defense: that the abuse had never occurred (relying on the testimony of a physician who examined the two girls and found no evidence of abuse), or, even if it had, he had not been living at the home during the period in which the girls claimed to have suffered abuse, and thus could not have been the perpetrator. In support of its first argument, the defense offered the testimony of Dr. Denise Neimera, a Newport family physician who had examined the step-daughters in September 1994 after their move into foster care. According to Neimera, both girls denied any sexual abuse whatsoever, and even expressed "positive feelings" toward Hicks. After a physical examination of the younger step-daughter, Neimera found no evidence of anal penetration, and was of the opinion that vaginal penetration was "unlikely." In particular, Neimera noted that there was no evidence of a significant amount of vaginal penetration. As to the older child, Neimera's findings were consistent with vaginal penetration "more than once." The older girl told Neimera that she had

5

engaged in intercourse with an 11-year-old boy, but specifically denied any intercourse with Hicks. In support of its second theory (that Hicks was not living at the Coventry Street house), the defense offered evidence tending to prove that Hicks had moved in with his mother in March 1994. This evidence, however, was controverted as to the exact timing, as well as the extent to which Hicks returned to the home even after he had moved out. Hicks's wife (the girls' mother) testified that Hicks had moved out. The owner of the house testified that, although she was around on a weekly basis, she was not aware Hicks had moved out until "May or June" of 1994, and that, even then, he continued to spend time in the home. Hicks's mother was also equivocal about when he had come to live with her.

The jury deliberated for less than an hour, and returned guilty verdicts on all three counts. At sentencing, where Hicks was represented by Attorney Susan Davis, Hicks received aggregate sentences of 24 to 41 years.

## II. Direct Appeal

On direct appeal, Hicks raised two claims of error, both of which the Vermont Supreme Court rejected in a March 18, 1998 order. *See State v. Hicks*, 167 Vt. 623 (1998).

First, Hicks argued that the trial court erred by failing to dismiss the charges against him because the State did not allege the time of the offenses as specifically as possible. Hicks pointed to the amendment of the information, which expanded the date range only after Hicks had given notice of his alibi defense. Hicks argued that the State should have had to stick with the original date range of April 3 to June 1, 1994. The

Vermont Supreme Court rejected this argument, asserting that notice of the time of the offense need only be "reasonable" under the circumstances, a requirement that was amply satisfied here in light of the ages of the victims and their inability to establish a more precise time frame. *Id*. at 624. Besides, the court said, "a defendant has no vested right to an alibi defense." *Id*.

Second, Hicks argued that the court erred in denying his motion to continue to allow him to hire a new attorney. Emphasizing the deferential standard of review, the Vermont Supreme Court again rejected Hicks's argument, noting that, in light of the trial court's considered inquiries into the reasons that Hicks wanted to substitute counsel and responses to each area of concern, the court had not abused its discretion.

### III. First Petition for Post-Conviction Relief

On May 11, 1998, soon after his conviction was affirmed on direct appeal, Hicks filed his first petition for post-conviction relief (PCR) under 13 V.S.A. §§ 7131-7137. (Doc. 11-2.) Initially brought *pro se*, the petition, as first amended by subsequently-obtained counsel (Doc. 11-3), raised four grounds for relief: (1) ineffective assistance of trial counsel Robert Fairbanks; (2) ineffective assistance of sentencing counsel Susan Davis; (3) certain jury irregularities; and (4) judicial misconduct by the trial judge in light of certain conflicts of interest.[2] In its order on the PCR petition, however, the Vermont Superior Court addressed only Hicks's claim that the representation of Attorney

---

[2] A second amended petition included only the allegations of ineffective assistance by Attorney Davis and the jury irregularities. (Doc. 11-4.)

Fairbanks had been constitutionally ineffective insofar as he had failed to procure an expert witness to rebut the testimony of the State's expert.[3]

To resolve this claim, the Superior Court, at a two-day PCR trial held in May 2005, heard testimony from Hicks's trial counsel, two legal experts, and two psychological experts. The court's twenty-five page order, dated December 14, 2005 and authored by Presiding Judge Dennis R. Pearson, concluded that Hicks had failed to make the necessary showing for a claim of ineffective assistance of counsel. Emphasizing that the ineffective assistance claim turned on the state of both scientific evidence and Vermont law *at the time of trial* (i.e., July 1996), the court identified two deficiencies in counsel's performance: (1) his failure to retain an expert, at least for trial preparation; and (2) his failure to either object or move to strike the testimony of the State's expert witness. The former error, given the "murky" nature of the underlying scientific evidence at the time, did not fall "below prevailing standards of professional competence." (Doc. 11-5 at 24.) The lack of an objection, however, was the "real failure" given the state of the law. (*Id*.) In particular, the court stressed the need for an objection after Porter's statement that child abuse victims are more likely to falsely deny the abuse when first confronted. (*Id*.) Despite the omission, the court held that Hicks had failed to present expert legal opinion that "it was an unprofessional error falling below minimal standards not to make those objections." (*Id*.) Additionally, the court

---

[3] In its order, the court referred to a second amendment to the PCR petition "filed on October 22, 2004" (Doc. 11-5 at 1, 10 n.19), which has not been made a part of the record in the instant case. The second amended petition supplied for this record, *see supra* n.2, is dated July 11, 2002. (Doc. 11-4.) One presumes that the order of the Vermont Superior Court was responsive to the amended filing that has not been made part of the record of this case.

reasoned that, even if it were wrong in its conclusion that these errors did not fall below prevailing professional norms, "any defects were ultimately of insufficient prejudicial impact to warrant a new trial." (*Id*. at 25.) Given the nature of the evidence presented—the strong testimony of the victims, the absence of medical evidence precluding the possibility of the assaults, the weak alibi defense, and the skillful presentation of the prosecutor—counsel's deficient performance did not prejudice the defense.

Again, cloaked in a deferential standard of review, the Vermont Supreme Court affirmed the judgment of the trial court. (Doc. 11-6.) *See In re Hicks*, No. 2006-015, 2006 WL 5847248 (Vt. Aug. 1, 2006).

## IV. Second Petition for Post-Conviction Relief

On August 15, 2006, two weeks after the Vermont Supreme Court's affirmance of the Superior Court order, Hicks brought his second PCR petition. (Doc. 11-7.) Hicks asserted six grounds for relief: (1) unduly suggestive police interview techniques used with the step-daughters; (2) ineffective assistance of counsel in the failure to investigate potentially favorable witnesses and failure to object; (3) judicial error in the limitations placed on certain aspects of cross-examination of State witnesses, particularly with respect to evidence of purported past false allegations of abuse; (4) error in the admission of Porter's testimony regarding the truth of the victim's statements and her descriptions of delayed disclosure; (5) prosecutorial misconduct in the failure to turn over discovery related to social services documents that would have provided exculpatory information, as well as the subornation of perjury; and (6) an Eighth Amendment violation in the failure of the sentencing judge to run his sentences concurrently rather than

consecutively. (Doc. 11-7.) After the State filed a motion to dismiss, Hicks, through counsel, filed an "opposition" to the motion that included an "addendum" to the original *pro se* filing. (Doc. 11-8.) This addendum raised a number of additional claims as to the ineffectiveness of Hicks's trial counsel, as well as a new claim of ineffectiveness of counsel in the first PCR proceeding.

On July 22, 2008, the Vermont Superior Court granted the State's motion to dismiss in part, reasoning that "claim[s] of trial error [that] ha[ve] been expressly raised and addressed either on direct appeal, or in a preceding post[-]conviction relief petition, [are] clearly barred from again being asserted." (Doc. 11-9 at 3.) Accordingly, the court dismissed all claims that had been previously raised—those related to the expert evidence of delayed reporting, the credibility of the victims, and trial counsel's effectiveness with respect to these claims. Also, the claim related to ineffectiveness of counsel as to past false allegations of sexual abuse by the victims had been raised initially, but abandoned as the PCR case moved to trial. As to the previously-unasserted claims, the court held that the State had failed to establish Hicks's "abuse of the writ," and accordingly denied the motion to dismiss as to these claims.

Subsequently, the case was resolved by agreement of the parties, under the signature of Hicks's counsel, by adjusting the sentence (a reduction of the maximum prison term from 41 to 35 years) and dismissing the PCR petition. (Doc. 11-1.) This stipulated dismissal is dated May 24, 2012. (*Id.*)

## V.　Federal Habeas Corpus Petition Under § 2254

On August 20, 2012, Hicks filed the instant habeas petition. (Doc. 1.) His petition, read liberally, asserts a series of claims, including: (1) the State failed to allege the time of the offenses as specifically as possible, depriving him of a possible alibi defense; (2) an allegation of police misconduct, as the investigating officer told his step-daughters that Hicks had molested them when they asserted that an individual named "Dan" had done so; (3) an allegation of prosecutorial misconduct, as the prosecutor knowingly pursued perjured testimony and suppressed evidence of a false report of rape by one of the victims; (4) an allegation of judicial misconduct, as the trial judge and State's Attorney were on the same domestic violence task force; and (5) ineffective assistance of trial counsel, as his attorney failed to obtain a psychological expert to rebut the State's expert witness, expressed an unwillingness to defend Hicks in court, failed to depose the State's expert, and failed to investigate other potential witnesses.

## Discussion

## I.　Federal Habeas Corpus Petition

Pursuant to 28 U.S.C. § 2254(d), the court may grant a writ of habeas corpus if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." Of course, to apply this standard—that is, to decide whether a state court has "unreasonably" applied federal law—there must be some underlying state court adjudication of the merits of the petitioner's claim. The habeas corpus statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), makes this requirement explicit, as it

11

provides that a federal court may not consider a habeas petition unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); *Georgison v. Donelli*, 588 F.3d 145 (2d Cir. 2009).

Because certain of Hicks's claims of error in the state proceedings were not presented previously in the state courts, this court must first consider the threshold issue of exhaustion. To exhaust state court remedies "a petitioner must present the substance of the same federal constitutional claims that he now urges upon the federal court to the highest court in the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001) (quotation marks and citations omitted). The exhaustion requirement is based upon "interests of comity and federalism [which] dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005).

A petitioner need not first seek state habeas review before submitting a petition under § 2254, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999), but a complete state-level review of his federal claims, by means of either a direct appeal or collateral review, is a prerequisite. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (noting that a state habeas petitioner "must first have presented his claim to the highest court of the state"). "In general, the exhaustion doctrine provides that a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim." *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186,

12

191 (2d Cir. 1982) (en banc). This means "the petition must have informed the state court of both the factual and legal premises of the claim he asserts in federal court." *Id.* As an exception to this rule, a federal court may find that unexhausted claims should be "deemed exhausted" if there is a de facto absence of available state remedies because the claims are "procedurally barred under state law" (and thus presentation in the state forum would be futile). *Ramirez v. Attorney Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001).[4] The burden of proving exhaustion lies with the petitioner. *See Lopez v. Unger*, 2010 WL 3937190, at *4 (E.D.N.Y. Sept. 30, 2010) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998)).

This case presents a "mixed petition," because Hicks has included both exhausted an unexhausted claims. On the one hand, Hicks raises claims that were addressed previously by the Vermont Supreme Court on direct appeal (the deprivation of an alibi defense) and on appeal from the Superior Court's order on the first PCR petition (the ineffective assistance of counsel as to the failure to procure an expert). On the other hand, certain other claims (such as the assertions of prosecutorial, police, and judicial misconduct) have not been brought before the Vermont Supreme Court at all, as required for exhaustion. *See Aparicio*, 269 F.3d at 89-90 (to satisfy exhaustion requirement under § 2254, petitioner must first assert the substance of the federal claim "to the highest court in the pertinent state").

---

[4] Also, federal courts may only consider the merits of procedurally-defaulted claims where the petitioner can establish both cause for his procedural default and resulting prejudice or, alternatively, that a fundamental miscarriage of justice would occur absent federal court review of the claims. *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009) (citation omitted). Respondent has not argued that Hicks's claims are procedurally barred in state court, and this court thus has no reason to consider whether dismissal on that basis would be a more appropriate disposition.

Faced with a "mixed petition," this court must discern the proper disposition. For a district court to review a petition filed under 28 U.S.C. § 2254, the general rule is that there must be "total exhaustion" of all claims. *See Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). The "total exhaustion" rule requires that "a district court . . . dismiss habeas petitions containing both unexhausted and exhausted claims." *Id*. at 522. There is, however, an exception to the total exhaustion rule, set forth in the AEDPA, which allows a district court to deny an entire habeas corpus petition on the merits notwithstanding a petitioner's failure to exhaust all of his claims. *See* 28 U.S.C. § 2254(b)(2). Denial of such a petition is appropriate when the unexhausted claims are "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

This court cannot conclude that Hicks's unexhausted claims are plainly without merit. There is simply nothing on the record, either here or in any state proceedings, which would allow this court to assess the merits of the claims of judicial, prosecutorial, or police misconduct. This is likely a symptom of Hicks's failure to exhaust. *See Rose*, 455 U.S. at 519 ("federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review"). As explained by the order of the Vermont Superior Court on the State's motion to dismiss Hicks's second PCR petition, issues that were not raised in the first PCR petition may still be pursued in a subsequent PCR proceeding in state court. (Doc. 11-9.) Because there is no statute of limitations for seeking post-conviction review in Vermont, state court remedies may remain available with respect to these issues. *See* 13 V.S.A. § 7131 (prisoner may file petition for post-conviction review "at any time").

14

Because the unexhausted claims are not plainly meritless, this court cannot consider the merits of Hicks's petition at this time. *Zarvela v. Artuz*, 254 F.3d 374, 379 (2d Cir. 2001) ("a habeas court cannot proceed to adjudicate a mixed petition"). What this court can do is dismiss the petition without prejudice and offer the petitioner "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (citation omitted).

Or, as an alternative, a court can stay the habeas proceeding until all claims have been exhausted in state court. *Rhines*, 544 U.S. at 277-78; *see Zarvela*, 254 F.3d at 380 ("a district court should exercise discretion either to stay further proceedings on the remaining portion of the petition or to dismiss the petition in its entirety"). The "stay and abeyance" option, however, "should be available in only limited circumstances." *Rhines*, 544 U.S. at 277. Specifically, a court may stay a habeas proceeding only where there is good cause for the failure to exhaust and the unexhausted claims are not meritless. *Id.*; *Pierre v. Ercole*, 607 F. Supp. 2d 605, 608 (S.D.N.Y. 2009). The primary concern giving rise to this alternative was that, due to the one-year limitations period for federal habeas petitions, dismissing a mixed petition outright might not leave the petitioner sufficient time in which to (1) file a petition in state court, (2) exhaust his claims, and (3) return to federal court in a timely manner. *See Rhines*, 544 U.S. at 275.

In this case, the one-year limitations period, despite the fact that Hicks's conviction came in 1996, is far from expired. The federal habeas corpus statute, 28 U.S.C. § 2244(d)(1), imposes a one-year limitations period on applications for a writ of

15

habeas corpus by a person in state custody. In Hicks's case, that one-year period commenced 90 days after the Vermont Supreme Court decided his direct appeal, unless Hicks petitioned the United States Supreme Court for a writ of certiorari. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). There is no indication of any such petition in the record. However, before the 90-day limitations period lapsed, Hicks filed his first PCR petition in state court. So the clock never started. Moreover, while this PCR petition was pending, the statutory clock on Hicks's habeas was tolled. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). This claim remained pending until August 1, 2006, when the Vermont Supreme Court affirmed the Superior Court's rejection of the petition. (Doc. 11-6.) *See In re Hicks*, No. 2006-015, 2006 WL 5847248 (Vt. Aug. 1, 2006). And so the clock began.

The clock was quickly paused yet again. Within two weeks (i.e., 14 days), Hicks filed his second PCR petition, which again tolled the statute of limitations. *See* 28 U.S.C. § 2244(d)(2). This second petition was dismissed by stipulation on May 24, 2012, restarting the clock. Because a pending federal habeas corpus petition does not toll the AEDPA limitations period, *Rhines*, 544 U.S. at 274-75, the clock continues to run. The limitations period will expire on or about May 10, 2013.

Hicks should therefore have ample time in which to submit his unexhausted claims in state court, and to return to this court, if necessary, without running afoul of the one year limitations period set forth at 28 U.S.C. § 2254(d)(1). So long as Hicks brings his

16

unexhausted claims in a subsequent state PCR petition without protracted delay (which would toll the clock), and does not dawdle in refiling his federal habeas petition upon the resolution of the state petition (once the clock starts running), the time bar poses no barrier to consideration of the federal habeas petition in this court. Accordingly, "stay and abeyance" is unnecessary under these circumstances, and I recommend that the petition (Doc. 1) be DISMISSED, and the State's "motion for summary dismissal" (Doc. 8) be GRANTED.

For the sake of clarity, this court offers the following instructions should Hicks desire future habeas review. From here, Hicks has two choices: (1) abandon the unexhausted claims and refile the federal habeas petition raising only claims that have been exhausted in state court; or (2) bring all unexhausted claims in a new state PCR petition and, if relief is not granted at the Superior Court, appeal to the Vermont Supreme Court. The former option (refiling) is fairly straightforward. The latter, however, requires a bit more exposition. If he prefers this option, Hicks is advised to file another PCR petition in state court, raising only the unexhausted claims he wishes to include in his federal habeas petition. All claims that have not been considered by the Vermont Supreme Court—the police misconduct claim (i.e., coercive interview techniques), the prosecutorial misconduct claim (i.e., suppression of evidence of molestation and false report of rape, subornation of perjury), the judicial misconduct claim (i.e., sitting on the same task force as the State's Attorney) and the ineffective assistance claim (i.e., on any grounds other than the failure to obtain an expert)—must be considered by that court before they can form the basis of a federal habeas petition. The state petition should be

17

filed in a timely fashion, given the continued running of the one-year limitations clock. Once filed, the state court petition will again toll the federal habeas time limitation. *See* 28 U.S.C. § 2244(d)(2). Should the Superior Court deny the petition, that decision must be appealed to the Vermont Supreme Court for the issues raised therein to be "exhausted" such that they could be considered on federal habeas review.

## II.     Motion for Appointment of Counsel

Hicks also moves the court for appointment of counsel. (Doc. 14.) In support of his motion, Hicks cites his "limited access to the courts and law library," as well as his delayed receipt of court documents in prison. (*Id*. at 3.)

In light of the dismissal of the habeas petition, I recommend that this motion be DENIED without prejudice. If Hicks refiles his habeas petition, consisting of only exhausted claims, he may move for the appointment of counsel again, at which time the court can take up the question.

## Conclusion

For the reasons set forth above, I recommend that Hicks's habeas petition (Doc. 1) be DISMISSED without prejudice. Accordingly, I further recommend that the State's "motion for summary dismissal" (Doc. 8) be GRANTED. The dismissal of a petition without prejudice for failure to exhaust does not amount to a "federal adjudication on the merits" that renders a subsequent petition "successive" within the meaning of AEDPA. *Camarano v. Irvin*, 98 F.3d 44, 46-47 (2d Cir. 1996) (per curiam). Therefore, Hicks is not required to seek authorization from the Second Circuit to file another habeas petition. *Id*. at 44-45; *see* 28 U.S.C. § 2244(b)(3)(A).

In light of the resolution of Hicks's habeas petition, I recommend that his motion for appointment of counsel (Doc. 14) be DENIED.

Dated at Burlington, in the District of Vermont, this 3rd day of January, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).